UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK

_____

JUNE ELIZABETH RICHARDSON,

                          Plaintiff              DECISION AND ORDER

-vs-

                                                 15-CV-6276 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

_____

APPEARANCES

For the Plaintiff:             Justin M. Goldstein, Esq.
                               Kenneth R. Hiller, Esq.
                               Law Offices of Kenneth Hiller, PPLC
                               6000 North Bailey Avenue, Suite 1A
                               Amherst, New York 14226

For the Defendant:         David B. Myers, Esq.
                               Social Security Administration
                               Office of General Counsel
                               26 Federal Plaza, Room 3904
                               New York, New York 10278

                               Grace M. Carducci, A.U.S.A.
                               Kathryn L. Smith, A.U.S.A.
                               Office of the United States Attorney
                               for the Western District of New York
                               100 State Street
                               Rochester, New York 14614

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of June Richardson ("Richardson" or "Plaintiff") for Social

1

Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits.  Now before the Court is Plaintiff's motion (Docket No. [#9]) for judgment on the pleadings and Defendant's cross-motion [#11] for judgment on the pleadings.  Plaintiff's application is granted, Defendant's cross-motion is denied, and this matter is remanded for further administrative proceedings.

BACKGROUND

The reader is presumed to be familiar with the Parties' submissions, which contain detailed recitations of the pertinent facts.  The Court has reviewed the entire administrative record and will offer only a brief summary of the facts contained therein.[1]

With regard to the medical evidence, the Court observes that Richardson has only a single impairment, low back pain, which has been diagnosed as "sprain of sacrum," "sacroiliac strain," "lumbar strain" and "degenerative disc disease." Richardson initially injured herself on October 8, 2011, while lifting a bag of trash at work. (198).  At that time, Richardson's treating physician, George W. Arnstadt, M.D. ("Arnstadt"), indicated that she had a "mild (25%)" impairment. (199).  Approximately one month later, on November 17, 2011, Arnstadt's nurse practitioner, Samuel Cappiello, NP ("Cappiello"), indicated that Richardson had made a full recovery. (202) ("She no longer has any significant discomfort and is back to her baseline function. . . . [She] may return to regular activity without restrictions. . . .  I concluded that this patient

---

[1] *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) ("To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.") (citation omitted). Of course, in discussing the entire record, the Court "keep[s] in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998).

has reached maximum medical improvement . . . [and] has no impairment.").

However, just eleven days later, on November 28, 2011, and without any mention of a further injury, Richardson returned to Arnstadt's office (Concentra Medical Centers), complaining of "recurrent left [sacroiliac] SI joint pain." (204). Cappiello reported that Richardson appeared to be "in moderate distress," with decreased range of movement in the lumbar spine. (204). Arnstadt gave Richardson an injection in the sacroiliac joint. (204). On December 1, 2011, Richardson returned to Arnstadt's office, and Mari Lutz, RPAC ("Lutz") reported that she was "overall" "doing much better since receiving injections last visit." (206). Upon examination, the only abnormal finding was "mild tenderness to palpation left SI [sacroiliac] area," and Lutz stated, "problem is resolving." (206). On December 20, 2011, Richardson returned to Arnstadt's office, and reportedly told Margaret Barber RPAC ("Barber") that she had "no pain or limitations to daily activities," and was attending physical therapy ("PT"). (208). The results of Barber's physical examination of Richardson were entirely normal. (208). On December 29, 2011, Cappiello reported that Richardson's pain was "resolved," though she was "having some ongoing residual discomfort." (210). The results of Cappiello's physical examination of Richardson were entirely normal. (210). On January 26, 2012, Richardson returned to Arnstadt's office, and indicated that she was working her "regular duty." (212). Doug Mincer, RPAC ("Mincer") reported, "She does not have any pain." (212). Mincer conducted a physical examination, which was entirely normal, and released Richardson from the office's care.

However, about a month later, on February 23, 2012, Richardson returned to Arnstadt's office, complaining that her symptoms were worsening, though again without any apparent precipitating cause. (214). Lutz conducted a physical examination and reported "tender low back and point tender left paraspinal muscle." Lutz advised Richardson to take Tylenol or Advil as needed for pain and prescribed the muscle relaxant cyclobenzaprine (Flexeril) for her to take at bedtime. (214-215). On March 15, 2012, Richardson reportedly told Mincer that she was still having non-radiating pain in the left lumbar region, with the intensity level of 5/10. (216). Mincer conducted a physical exam which found "tenderness of the left L-spine," but was otherwise normal. (216). Richardson indicated that PT was providing "slow improvement." (216). Mincer recommended that Richardson not lift, push or pull anything weighing more than fifteen pounds, and that she avoid repetitive bending or twisting. (217).

On April 12, 2012, Richardson told Mincer that she had "lost her job last month," though she did not say why, and that she "ha[d] a lawyer trying to get SSD." (218). Richardson indicated that she still had left-sided lower back pain that was slowly improving with PT. (218). Mincer's physical exam results were normal except for "[t]enderness of the left L-spine at the level of the paraspinous muscles." (218). Mincer continued to recommend "[n]o lifting, pushing or pulling over 15 lbs. Avoid repetitive bending or twisting of the back." (219).

On May 24, 2012, Mincer reported that Richardson had received MRI testing, which "showed degen[erative] changes with mild narrowing." (237). The results of Mincer's physical examination mirrored the prior results, that is, only "[t]enderness of the left L-spine at the level of paraspinous muscles." (237). Mincer continued the same

4

limitations on lifting, pushing, pulling, bending and twisting. (238).

Also on May 24, 2012, Elizama Montalvo, M.D. ("Montalvo") performed a consultative orthopedic examination of Richardson. (220-222).  Richardson reportedly told Montalvo that she had "constant" "sharp, stabbing pain" that became "worse [after] walking three to four blocks." (220).  Further, Richardson reportedly stated that she did not have pain while sitting, but felt pain after getting up from sitting. (220).  Richardson indicated that the severity of her pain was 10/10, but that Flexeril reduced that to 5/10. (220). Montalvo noted that Richardson "had an MRI done on 04/24/12 that showed lumbar spondylosis without central spinal canal stenosis and degenerative changes with mild neural foraminal narrowing at L3-L4, L4-L5, and L5-S1." (220).  Richardson reportedly told Montalvo that she attended to her own personal needs and "cook[ed] daily," "clean[ed] weekly, and performed laundry and shopping with assistance from her son or husband to carry things. (220).  Richardson indicated that she spent her days watching television, listening to the radio and socializing with friends. (220).

Montalvo performed an orthopedic physical examination, and the results were entirely normal except for some limited range of movement in the lumbar spine. (221). Notably, Montalvo found no tenderness, spasm, or trigger points, and straight-leg testing was negative bilaterally. (221).  Moreover, Montalvo found that Richardson had normal gait, no difficulty squatting, no difficulty walking heel-to-toe, no difficulty getting on and off the examining table, full strength in all extremities and normal reflexes.  As for her medical source statement, Montalvo stated: "She has mild limitation on bending, lifting and carrying." (222).

There is subsequently an eight-month gap in the treatment notes, during which Richardson did not seek treatment.  Then, on March 1, 2013, Richardson returned to Arnstadt's office, complaining of increased low back pain when walking, and requesting additional documentation for her disability claim:

> She states her pain increases with walking.  She states 'I start out o.k.' but then as the distance and time increase so does her back pain.  She walks 4 blocks to the bus stop.  She is in pain by the time she gets there.  She also walks flexed forward when she is in pain.  She brings a form in for DSS today.

(235).  Richardson indicated, though, that she was studying accounting at Everest Institute ("Everest") in Rochester.  Physician's assistant Susan Lyons PA ("Lyons") reported that Richardson appeared to be in "mild distress," and that the results of the physical exam were normal except for tenderness in the left lumbar spine and limited range of movement. (235).  On April 8, 2013, Mincer reported, "No improvement over the last month.  College is going well.  Pain when she walks." (233).  Otherwise, the office notes were the same as for the prior visit.

On July 10, 2013, Mincer reported:  "No improvement over the last month. College is going ok.  Pain when she walks, good days and bad depending on the weather." (231).  However, Mincer increased Richardson's lifting limit to twenty pounds. (232) ("No lifting, pushing or pulling over 20 lbs.  Avoid repetitive bending or twisting of the back."). Mincer made essentially identical office notes on August 5, 2013. (229).  On September 6, 2013, Lyons reported that Richardson had "no major changes in her [condition since the] last app[ointment]," that she had a Social Disability hearing scheduled, and that she was "studying accounting [which was] going well." (227).

Mincer kept the same limitations in place. (227) ("No lifting, pushing or pulling over 20

lbs.  Avoid repetitive bending or twisting of the back.").

On October 4, 2013, Mincer signed a form entitled "Medical Source Opinion

Listing § 1.04A - Disorders of the Spine," in which he opined that Richardson met the

requirements for Listing 1.04A, meaning that she had a spine disorder  having

> [e]vidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle weakness) accompanied by
> sensory or reflex loss and if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine).

(261).  Mincer checked a box indicating that Richardson met this definition, but did not

provide further comment about the particulars of her condition or the findings upon

which he was basing that answer.  Mincer also indicated that pain significantly impaired

Richardson's daily functioning, but that she was nevertheless able to work. (261).

The final piece of medical evidence is a report completed by Kristin Hernberg

RPA ("Hernberg"). (262-263).  The report is a two-page check-the-box report that is

unaccompanied by any treatment notes or office notes.  The form report indicates that

Hernbeg was affiliated with WorkFitMedical, LLC, which provided the report for its

"client," Corinthian College (262), the parent company of Everest Institute, where

Richardson was studying accounting. (262).  Consequently, while there is no

explanation for how the report came to exist, it appears that Hernberg provided medical

services for students at Everest Institute, including Richardson.  In any event, most of

the report is blank, except that Hernberg indicated the following:  Richardson was

precluded from all bending/twisting; her lifting, carrying, pushing and pulling were limited

to fifteen pounds; and she was "moderate[ly] (50%)" impaired. (262-263). Hernberg's report indicates that Richardson's underlying ailment was "chronic degen disc disease," though there is no indication that Hernberg examined Richardson. (262- 263) (No mention of any examination or clinical findings).

On  October 7, 2013, Richardson testified at the administrative hearing before an Administrative Law Judge ("ALJ"), accompanied by her representative.  Richardson testified that her lower-back pain is "constant," and that she can only walk one block before the pain "prevents [her] from walking any longer." (52).  Richardson further indicated that when she is at home she generally sits with her feet up, and then switch positions every fifteen minutes due to pain. (52). Richardson stated that her pain is so bad that she cannot bend over at all, and cannot cook, clean, do laundry or go shopping. (53).  Richardson indicated that she has difficulty even attending to her personal hygiene, since it hurts her back to bend over and wash her hair. (54). Richardson stated, though, that she attends accounting classes, in pursuit of an associates degree, three times per week for three hours. (49-50).

Richardson testified that one of her past jobs was as an attendant in a school cafeteria, which involved watching first grade children to make sure that they behaved during lunch, and then cleaning off the tables. (44-45).  Other evidence in the record suggests that Richardson's duties were more extensive than simply watching the children during lunch. (191) ("I worked in a kindergarten class assisting the teachers by photocopying materials, taking children to the bathroom, feeding them lunch.").[2]  In any

---

[2]There is no signature or date on this document, set forth at pp. 189-190 of the record.

event, the record indicates that Richardson worked for the Rochester City School District during  2001, 2002, 2003, 2004, 2005, 2007 and 2008, with annual earnings of $2,380, $4,823, $3,194, $156, $141, $324 and $543, respectively.  (135).  Richardson stated that the job was part-time (four hours per day) (164), though elsewhere in the record she states that she worked at the school eight hours per day five days per week. (191).  Richardson stated that the job involved walking, standing, and lifting up to ten pounds, but no sitting, climbing, stooping, kneeling, crouching or crawling. (164). Richardson indicated that her earnings during the latter four years of this job were significantly lower than the first three years because she reduced her hours to care for her son. (44).

A vocational expert ("VE") also testified at the hearing, though only concerning the exertional classification of Richardson's past relevant work.  Specifically, the VE testified that all of Richardson's past relevant work was performed at the light exertional level, including her work as a cafeteria attendant, DOT 311-677-101. (55).

On November 29, 2013, the ALJ issued a decision finding that Richardson is not disabled. (71-77).  In that regard, the ALJ applied the required five-step sequential analysis, *see*, 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) (SSDI) & 416.920(a)(4)(i)-(v) (SSI).  At steps one and two, respectively, the ALJ found that Richardson had not engaged in substantial gainful activity ("SGA") since March 14, 2012, the alleged onset date, and that she had the following serious impairment: "disorder of the spine." (73).  At step three, the ALJ found that Richardson's impairment did not meet or medically equal any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (73).  The ALJ found that although Mincer had opined that Richardson met the requirements for listing 1.04(A),

9

"the medical evidence does not support this finding as there [are] no findings of significant neurological abnormalities or evidence of arachnoiditis or stenosis with claudication and other manifestations." (73); *see also*, (75-76) ("After March 2012, the claimant exhibit mild problems with her impairment.  Treatment records show some limited ROM but negative straight leg raising, normal gait and no trigger points.").

Prior to reaching step four of the sequential analysis, the ALJ found that Richardson had the residual functional capacity ("RFC") to "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (74).  In that regard, such light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (Westlaw 2016).  Then, at step four of the sequential analysis, the ALJ found that Richardson could perform her past relevant work as a cafeteria attendant, and was therefore not disabled.  As noted earlier, the VE testified that the cafeteria attendant's job was classified as light work.

In making the aforementioned RFC determination the ALJ considered two medical opinions: The opinion of Montalvo and the opinion of Mincer. (76).  The ALJ gave "little weight" to Mincer's opinion and "some weight" to Montalvo's opinion. (76).  In particular, the ALJ spent two entire paragraphs explaining why he gave only "very limited weight" to Mincer's opinion that Richardson met the requirements for listing 1.04.

(75-76).  The ALJ reviewed the entire medical record, including the mostly normal findings of practically every examination which Richardson had received, the mild MRI results, the conservative treatment which Arnstatd's office had provided, and the lack of a referral to any specialist, and concluded that such evidence was not consistent with Mincer's opinion. (75-76).  At the same time, the ALJ explained that he was giving more weight to Montalvo's opinion because it was more consistent with the evidence. (76) ("I have afforded more weight to the CE [Montalvo] than to CMC [Arnstadts's office] and Mr. Mincer as the evidence supports the CE's findings.").

Also as part of his RFC determination, the ALJ found that Richardson's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible." (74).  In that regard the ALJ discussed matters such as Richardson's fairly extensive activities of daily living (including the fact that she was attending college), her conservative treatment regimen, and the relatively mild medical findings discussed earlier. (74-76).

Richardson appealed, and in support of the appeal submitted Hernberg's report, which was completed after the hearing.  However, on March 10, 2015, the Appeals Council declined to review the ALJ's determination. (1-4).  Consequently, the ALJ's determination became the Commissioner's final decision.

On May 7, 2015, Plaintiff commenced this action.  In her motion for judgment on the pleadings, Richardson contends that the Commissioner's decision must be reversed for the following reasons: 1) the ALJ's RFC determination "is unsupported by substantial evidence and is inconsistent with legal standards;" 2) the ALJ did not develop the record; 3) the ALJ did not properly evaluate credibility; and 4) the ALJ's

determination that Plaintiff could perform her past relevant work as a cafeteria attendant

was erroneous since such work did not amount to SGA.  Plaintiff further contends that

since she could not perform her past relevant work the ALJ should have found her

disabled at Step Five using the grids, based upon her age, education and work

experience.

The Commissioner opposes Richardson's motion as discussed further below,

and has cross-moved for judgment on the pleadings.

DISCUSSION

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the

Commissioner of Social security as to any fact, if supported by substantial evidence,

shall be conclusive."  The issue to be determined by this Court is whether the

Commissioner's conclusions "are supported by substantial evidence in the record as a

whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998); *see also, Walker v. Bowen*, 660 F.Supp. 360, 362 (S.D.N.Y. 1987)

("The Secretary's findings of fact are binding on this Court so long as the claimant

receives a fair hearing, no error of law is committed, and the findings are supported by

'substantial evidence' in the administrative record.") (Weinfeld, J.).  Substantial

evidence is defined as "more than a mere scintilla.  It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*,

134 F.3d at 501.

For purposes of the Social Security Act, disability is the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of not less

12

than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

*Evidentiary Support for the RFC Determination*

Richardson contends both that "the ALJ fail[ed] to support his RFC finding with substantial evidence," and that "it is unclear how the ALJ formulated his RFC finding."[3] Richardson states, for example, that "the record does not contain any information regarding [her] ability to sit, stand, walk and carry," and "does not support [a finding that she has] the ability to perform the full-range of light work."[4] Richardson therefore contends that the ALJ may have improperly substituted his own medical opinion for competent medical opinion.  Richardson further maintains that the ALJ should have questioned the VE as to whether her past relevant work could be performed with limitations on lifting, bending and twisting.  Further, Richardson contends that the medical report from PA Hernberg, which was submitted to the Appeals Council, demonstrates that the ALJ's RFC determination was incorrect.  Richardson also maintains that the ALJ failed to explain the weight that he gave to the medical opinions.

The Commissioner responds that Montalvo provided the only medical opinion concerning Richardson's abilities, which the ALJ correctly gave the most weight.  In that regard, the Commissioner argues that the ALJ's statement that he was giving Montalvo's opinion "some weight" is not ambiguous, since it is clear that he gave the opinion more weight than the opinion of Mincer, which he gave only "little weight."  The Commissioner further contends that Montalvo's opinion supports the ALJ's

---

[3]Pl. Memo of Law [#9-1] at p. 10.

[4]Pl. Memo of Law [#9-1] at p. 11.

determination that Richardson can perform the full range of light work, and that there

was no need to develop the record.  In particular, the Commissioner maintains that

"mild" limitations generally will not prevent a claimant from performing the full range of

work within an exertional category.  The Commissioner further indicates that Hernberg's

statement, which was submitted to the Appeals Council, does not undermine the ALJ's

determination.

The Court agrees with Defendant.  At the outset, Hernberg's report, which was

executed after the hearing and then submitted to the Appeals Council, does not

undermine the ALJ's RFC determination, for several reasons.  To begin with, unlike Dr.

Montalvo, Hernberg is a physician's assistant and therefore is not an acceptable

medical source, though she is an "other source" whose opinion should ordinarily be

considered.  Hernberg's report, though, provides no explanation or support for the

opinion expressed.  Instead, Hernberg merely states, in conclusory fashion, that

Richardson can only lift, carry, push and pull fifteen pounds and is precluded from

bending and twisting. (262).  Hernberg's report provides no explanation of the treating

relationship between herself and Richardson, if any, nor any indication that she even

examined Harrison.  Consequently, the Appeals Council did not err by declining to

review the ALJ's determination based upon its receipt of Hernberg's report. *See,*

*Rutkowski v. Astrue*, 368 F. App'x 226, 229-30 (2d Cir. 2010) ("While the evidence

[submitted to the Appeals Council] relates to the period before the ALJ's decision, it

does not add so much as to make the ALJ's decision contrary to the weight of the

evidence. The Essex County report is a conclusory one-page document that states little

more than that Rutkowski "meets listing 1.04." The report does not state  which of the

14

three subsections in Listing 1.04 Rutkowski's impairments satisfy, and does not explain the facts or reasoning that led to this determination. The Appeals Council did not err in refusing to review the decision.").

The Court also finds that the ALJ's determination that Richardson can perform the full range of light work is supported by substantial evidence, namely, Montalvo's report which found that Richardson had only "mild limitation on bending, lifting, and carrying." Preliminarily, the Court does not agree with Richardson's contention that Montalvo's use of the term "mild" renders her opinion impermissibly vague. In *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000) ("*Curry*"), the Second Circuit held that an ALJ's RFC determination was unsupported by substantial evidence, in part because the consulting doctor had used the terms "mild" and "moderate" "without additional information":

> Having reviewed the record in the light most favorable to the Commissioner, we find that the Commissioner failed to carry his burden of meeting the foregoing standard. The only evidence supporting the ALJ's conclusion that Curry "retains the residual functional capacity to perform the exertional requirements of at least sedentary work," is Dr. Mancheno's opinion that Curry's "impairment is: [l]ifting and carrying moderate; standing and walking, pushing and pulling and sitting mild." While the opinions of treating or consulting physicians need not be reduced to any particular formula, Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work. In particular, Dr. Mancheno's use of the terms "moderate" and "mild," without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work.

*Curry*, 209 F.3d at 123 (footnotes omitted). However, *Curry* does not stand for the broad proposition that a medical source opinion which uses terms like "mild" or

"moderate" is always too vague to constitute substantial evidence. For example, courts have held that *Curry* is inapplicable, even though a medical examiner uses terms like "mild" or "moderate," if the examiner conducts a thorough examination and explains the basis for the opinion. *See, e.g., Silsbee v. Colvin*, No. 3:14-CV-0345 GTS/ATB, 2015 WL 4508599, at *14 (N.D.N.Y. July 23, 2015) ("Plaintiff cites *Curry v. Apfel*, 209 F.3d 117, 123–24 (2d Cir.2000) as holding that vague terms such as 'moderate' restrictions are insufficient bases for making an RFC determination. While this general statement may still be true, more recent cases have held that when there is other medical evidence in addition to an RFC evaluation using terms such as "mild" and "moderate," such terms may properly be used in the RFC analysis. *See Tankisi v. Commissioner*, 521 F. App'x 29, 34 (2d Cir.2013))."; *see also, Caci v. Colvin*, No. 5:14-CV-01407, 2015 WL 9997202, at *10 (N.D.N.Y. Dec. 22, 2015) ("Relying on *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir.2000), superseded by statute on other grounds, 20 C.F.R. § 416.960(c)(2), Plaintiff correctly points out that a consultative examiner's report which concludes that a claimant's condition is 'mild' or 'moderate' without additional information does not allow an ALJ to infer that a claimant is capable of performing the exertional requirements of work.  In this case, however, [the consultative examiner's] opinions were supported by her extensive examination of Plaintiff.") (citations omitted), *report and recommendation adopted*, No. 514CV1407LEKTWD, 2016 WL 427098 (N.D.N.Y. Feb. 3, 2016).

Here, Montalvo's report details that she conducted a thorough examination which was essentially normal, except for some limited range-of-movement in Richardson's

lumbar spine. (221).  Montalvo noted, for example, that Richardson had full strength in all extremities, normal gait, no difficulty getting on or off the examining table, no sacroiliac tenderness, no trigger points, full ability to squat and negative straight-leg raising test bilaterally. (221).  As a summary of these benign findings, Montalvo's use of the term "mild" to describe Richardson's limitations is not vague.

Richardson nevertheless contends that Montalvo's opinion fails to provide substantial evidence for the ALJ's finding that she can perform the full range of light work, since it does not state the frequency with which she can lift and carry, but instead, indicates only that she has a "mild limitation" on lifting and carrying. (222).  As already mentioned, "light work" requires "frequent lifting or carrying of objects weighing up to 10 pounds," and the term "frequent" means

> occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.

Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).  Montalvo's orthopedic examination was essentially normal, except for limited lateral flexion and rotation in the thoracic/lumbar spines. (221).  Apart from that finding, the only problem that Montalvo found with Richardson's back was the underlying degenerative diseased shown by the MRI, which was not causing pain at the time of the examination. (220).  The ALJ properly relied on Montalvo's report in finding that Richardson could perform the full range of light work,

notwithstanding Montalvo's opinion that she had a "mild limitation" on lifting and

carrying.  Many courts have held that such mild or even moderate limitations are

consistent with the ability to perform the full range of light work. *See, e.g., Gurney v.*

*Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("Indeed,

moderate limitations [on "repetitive heavy lifting, bending, reaching, pushing, pulling, or

carrying"] —such as those assessed by Dr. Miller—are frequently found to be

consistent with an RFC for a full range of light work.") (collecting cases); *see also,*

*Brown v. Colvin*, 73 F. Supp. 3d 193, 199 (S.D.N.Y. 2014) (ALJ's determination that

claimant could perform full range of light work was supported by substantial evidence,

namely, the opinion of a consultative examiner, even though it included the opinion that

the claimant had "only mild limitations in prolonged walking, climbing, squatting,

kneeling, lifting, and carrying due to knee and lower back pain."); *Colon-Sanchez v.*

*Commissioner*, Civil Action No. 5:14-CV-0705 (TJM/DEP),  2016 WL 638816 at *7

(N.D.N.Y. Jan. 25, 2016) ("In this instance, the ALJ's RFC determination is

well-supported. The exertional components of that determination, in which the ALJ

concluded that plaintiff can perform a full range of light work, draw support from the

consultative examination . . . [which found] only mild-to-moderate limitations in plaintiff's

ability to lift, carry, push and pull, and no physical limitations to her standing, sitting, and

walking.") (footnotes omitted), *report & recommendation adopted by* 2016 WL 632548

(N.D.N.Y. Feb. 17, 2016).

For these same reasons, the Court disagrees with Richardson's contention that

the ALJ improperly substituted his own opinion for competent medical opinion when he

found that she can perform the full range of light work.  Instead, the Court finds that the ALJ based his RFC finding on Montalvo's opinion, which provides substantial evidence for that finding.

The Court further finds that the ALJ was not required to develop the record further.  In that regard, Richardson contends that "the record does not contain any information regarding [her] ability to sit, stand, walk, and carry."[5]  The Court does not agree, and finds for the reasons already discussed that Montalvo's opinion, as well as the medical evidence as a whole, supports the ALJ's findings that Richardson can perform the requirements of light work.  To the extent that Richardson maintains that the ALJ was required to discuss each and every exertional aspect of light work, such as the ability to sit, stand and walk,[6] the Court again disagrees.  On this point, the Second Circuit has stated:

> Before an ALJ classifies a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  The functions described in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. See 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184, at *5–6. Social Security Ruling 96–8p cautions that "a

---

[5]Pl. Memo of Law [#9-1] at p. 11.

[6]Pl. Memo of Law [#9-1] at pp. 11-12.

failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." 1996 WL 374184, at *4.

We have not yet declared whether an ALJ's failure to conduct an explicit function-by-function analysis at Step Four regarding the numerous illustrative functions listed in paragraphs (b), (c), and (d) is a *per se* error requiring remand.  We have said more generally (and now repeat) that where we are "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," we will not "hesitate to remand for further findings or a clearer explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). The automatic remand rule urged by [the claimant], however, goes far beyond this sensible practice. As already noted, the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 are only illustrative of the functions potentially relevant to an RFC assessment. Adopting a *per se* rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered. Any such rule in this Circuit, moreover, would put us at odds with sister Circuits who have recognized that an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms.

We decline to adopt a *per se* rule. The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed. Remand may be

> appropriate, however, where an ALJ fails to assess a claimant's capacity
> to perform relevant functions, despite contradictory evidence in the record,
> or where other inadequacies in the ALJ's analysis frustrate meaningful
> review.

*Cichocki v. Astrue*, 729 F.3d 172, 176-178 (2d Cir. 2013) (citations omitted).  Here, the reasons for the ALJ's RFC determination are adequately explained in his decision and are supported by substantial evidence.

Richardson also contends that the ALJ had a duty to develop the record by obtaining "disability reports" that Mincer may have completed for her.  In that regard, the record refers to Richardson bringing "DSS" paperwork to Mincer for him to sign.  However, the Court agrees with the Commissioner that such an argument is speculative.  On this point, Richardson has not stated whether Mincer actually completed such paperwork, and even if he did there is no reason to think that such reports would contain any information that is not already set forth in Mincer's office notes or his source opinion report.  Consequently the Court finds that there were no gaps in the record that required further development of the record.

Moreover, since the ALJ properly found that Richardson can perform the full range of light work, and since the VE testified that Richardson's job as a cafeteria attendant fell within the category of light work, there was no need for the ALJ to ask the VE about the specific requirements of such past work before determining that Richardson could still perform that job.

### The ALJ's Credibility Determination

Richardson next contends that when evaluating her credibility, the ALJ "failed to discuss crucial pieces of evidence contained in the treatment notes and opinion

21

evidence," and "relied upon factual errors."[7]  In particular, Richardson argues that the

ALJ should have accepted her subjective complaints and incorporated them into the

RFC determination, since "the record as a whole corroborates her allegations."[8]

However, as the ALJ explained, the record as a whole does not corroborate

Richardson's allegations.  For instance, at the hearing Richardson testified that her

lower-back pain is so severe and "constant" that she cannot walk more than one block,

cannot bend over at all,  cannot cook, clean, do laundry or go shopping, and must sit

with her feet up and switch positions every fifteen minutes. (53).  Richardson also told

Montalvo that her pain is a constant 10/10, except when she takes Flexeril which

reduces the pain to 5/10. (220).  Such statements are inconsistent with what she told

her own doctors, as well as with much of what she told Montalvo.   As just one example,

contrary to how Richardson testified at the hearing she told Montalvo that she had no

pain while sitting. (220).  Accordingly, Richardson's arguments concerning the ALJ's

credibility assessment lack merit.

### The ALJ's Determination That Richardson Can Perform Her Past Work

Lastly, Richardson contends that the ALJ erred, at step four of the sequential

analysis, by finding that she can perform her past relevant work as a cafeteria

attendant, because such work does not meet the definition of SGA.  In particular,

Richardson maintains that she never earned enough as a cafeteria attendant for such

work to qualify as SGA.  As noted earlier, Richardson worked at that job part-time over

---

[7]Pl. Memo of Law [#9-1] at p. 21.

[8]Pl. Memo of Law [#9-1] at p. 23.

a period of seven years, with annual earnings ranging between a high of $4,823 and a low of $141.

The Commissioner responds that substantial evidence supports the ALJ's determination that Richardson's work as a cafeteria attendant "was performed at SGA levels and therefore qualified as past relevant work."[9]  On this point, the Commissioner essentially argues that Richardson should be estopped from relying on her earnings records, since she previously stated that she was earning enough for the cafeteria attendant's job to qualify as SGA. (189,191) (Indicating that Richardson worked at the cafeteria attendant's job 40 hours per week at $7.35 per hour, though the document is not signed).  Alternatively, Defendant argues that Richardson's cafeteria-attendant work should be counted as SGA since she chose to work less than she could have, for reasons having nothing to do with her alleged disability.  That is, Richardson worked as a cafeteria attendant long before the alleged onset date of her disability (143), and she reduced her hours in order to care for her son. (44).

"Past relevant work" is defined as "work that you have done within the past 15 years, *that was substantial gainful activity*, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1) (emphasis added).

Substantial gainful activity is 'work activity that is both substantial and gainful.' 20 C.F.R. § 404.1572. Work activity is 'substantial' if it 'involves doing significant physical or mental activities,' and it is 'gainful' if it is 'the kind of work usually done for pay or profit, whether or not a profit is realized.' *Id*. Work that is done on a part-time basis may be considered substantial. *See Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir.1993) (citing 20 C.F.R. § 404.1572(a)).

_____

[9]Def. Memo of Law [#11-1] at p. 27.

*Fuentes v. Colvin*, No. 13-CV-6201P, 2015 WL 631969, at *9 (W.D.N.Y. Feb. 13,

2015).  A claimant's earnings are generally used to determine whether work rises to the

level of SGA, but earnings are not conclusive:

> In determining whether a claimant's past relevant work constitutes
> substantial gainful activity, "primary consideration" should be given to the
> earnings the claimant derived from the work activity. 20 C.F.R. §
> 404.1574(a)(1). The regulations provide earnings guidelines that "set a
> floor for earnings that presumptively constitute substantial gainful activity."
> *See Parker v. Astrue*, 2009 WL 3334341 [at] *3 (N.D.N.Y.2009). "Although
> earnings below the guidelines will 'ordinarily' show that an employee has
> not engaged in substantial gainful activity, earnings below the guidelines
> will not conclusively show that any employee has not engaged in
> substantial gainful activity." *Pickner v. Sullivan*, 985 F.2d at 403 (citing 20
> C.F.R. § 404.1574(a)(1)); *see Parker v. Astrue*, 2009 WL 3334341 at *3
> ("the ALJ may consider a claimant's past work, even if the earnings from
> that work fall below the guidelines").
>
> ***
>
> [T]he regulatory [earning] threshold levels are only guidelines, and work
> activity that falls short of the guidelines may still be considered past
> relevant work as long as it involved physical or mental activity and is the
> type of work typically conducted for pay.

*Fuentes v. Colvin*, 2015 WL 631969 at *10; *see also*, 20 C.F.R. § 404.1574(b)(3)(ii)

(Giving examples of situations in which the Commissioner will consider other

information in addition to earnings).  For example, the past work of a claimant who

earned less than the regulatory threshold levels may nevertheless qualify as SGA if the

claimant elected to work only part-time. *See, Reeder v. Apfel*, 214 F.3d 984, 989 (8th

Cir. 2000) ("Ms. Reeder consistently engaged in seasonal fruit-picking work for several

years. This work is usually done for pay and involves significant physical or mental

activities. Mrs. Reeder learned the job, was capable of performing this type of work, and

was able to do the job the entire season—season after season. Her low earnings are more the result of her choice to work only seasonally than an indicator of a physical or mental inability to work the entire year.  Regardless of her low earnings, we conclude that Ms. Reeder's seasonal work was substantial gainful activity.") (citation omitted); *see also, Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) ("Appellant's work as a secretary/bookkeeper and as an apartment manager was 'substantial' because it involved doing significant physical and mental activities. Appellant's low earnings were in part due to the fact that she was either self-employed or worked only part-time. However, work that is done on a part-time basis may be considered substantial.").

Here, it is undisputed that Richardson's true annual earnings for the cafeteria attendant's job fall well below the presumptive threshold for SGA.[10]  Defendant argues, though, that there is other substantial evidence in the record from which "a reasonable factfinder *could* conclude that the cafeteria attendant position was performed at SGA levels[.]" See, Def. Memo of Law [#11-1] at p. 30 (emphasis added).  However, the ALJ did not actually make any findings that would support a determination that Richardson's past work was SGA notwithstanding her low earnings.  In fact, the ALJ's decision does not even acknowledge that Richardson's cafeteria-attendant earnings are far below the presumptive SGA level, even though he commented at the hearing that they were "a very small amount." (44).  Consequently it is unclear to the Court whether the ALJ correctly applied the relevant law at Step Four of the sequential analysis.  Accordingly, the proper disposition is to remand for further administrative proceedings.

---

[10] https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 ("DI 10501.015 Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity").

CONCLUSION

Defendant's cross-motion [#11] for judgment on the pleadings is denied, and

Plaintiff's motion for judgment on the pleadings [#9] is granted, though her request to

have the matter remanded solely for calculation of benefits is denied.[11]  The matter is

reversed and remanded to the Commissioner for further administrative proceedings.

The Clerk of the Court is directed to enter judgment in Plaintiff's favor and to close this

action.

So Ordered.

Dated: Rochester, New York
         June 8, 2016                              ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

---

[11]Although Plaintiff's motion includes a demand to have the case remanded solely for calculation of benefits, she has not shown that such relief is appropriate in this case.